## BATTISTINI *v.* THE DISTRICT COURT OF PONCE.

### APPLICATION for a writ of *certiorari*.

No. 2.—Decided June 17, 1905.

CERTIORARI.—The Supreme Court has jurisdiction to issue a writ of *certiorari* in cases where the lack of an ordinary remedy prevents him from otherwise correcting the errors committed in a proceeding.

ID.—ANNULMENT OF JUDGMENT—WANT OF CAUSE OF ACTION.—The writ of *certiorari* will issue to annul a judgment when from the record it appears that the plaintiff has failed to prove facts sufficient to constitute a cause of action against the defendant upon which the judgment rendered against him is based.

MALICIOUS PROSECUTION.—The fact that a party has filed a complaint under an erroneous construction of the law, is not sufficient to warrant the presumption that it was filed maliciously and with the sole object of prejudicing the interests of the adverse party.

WANT OF CAUSE OF ACTION—PAYMENT OF COSTS AND ATTORNEYS' FEES.—The imposition of costs and the payment of attorneys' fees, in cases where it is permitted by the law, is the only corrective remedy against a party filing an action under an erroneous conception of the law and without a cause of action.

ID.—The fact that the defendant may have had to pay as attorneys' fees a greater amount than that which the law permits him to recover, is not sufficient to hold the plaintiff liable therefor, and compel him to indemnify the defendant for the loss suffered in this respect.

The facts are stated in the opinion.

*Mr. Cornwell* for applicant.

*Mr. Juan Guzmán Benítez* in opposition.

Mr. JUSTICE MacLEARY delivered the opinion of the court.

This case has a rather peculiar history. It is well enough to trace it hastily in order to fully understand the matters presented for our decision.

On the 20th of May, 1902, Luis Battistini brought suit against Francisco Crosas in the United States Court at Ponce to recover certain money which he alleged had been paid to Crosas on account of usurious interest. The case was contested and finally went off on demurrer on the 12th of January, 1903. Judge Holt in giving judgment for the defendant files the following opinion:

"*Opinion.*—This cause is submitted upon a demurrer to the bill. Its averments of fact are to be taken as true in considering the demurrer.    It appears from it that on March 9, 1901, Epitasia Martínez executed a mortgage on certain real estate for $3,000, to the defendant, Francisco Crosas; that the stipulated rate of interest was 18 per cent payable yearly in advance; that said Martínez sold the property to one Tomás González, and he in February, 1902, sold it to the complainant, Francisco L. Battistini; that about March 9, 1902, the complainant offered to pay the interest at the rate of 12 per cent but the defendant refusing to accept it the complainant was compelled to and has paid under protest $540, or the rate of 18 per cent per annum for the coming year, and the complainant claims that this payment under the interest law enacted by the Legislature of Porto Rico March 1, 1902, renders the contract of loan void and entitled him to recover back the money so paid in excess of the legal rate of interest, to wit: 12 per cent fixed by said law.

"Its cancellation and such recovery is the relief sought.

"The debt was created and the contract of loan made prior to the enactment of the act named.  .

"If the contention of counsel for the complainant is understood it is that the legislative act forbids the taking of usury in the future on contracts entered into prior to its passage and if done that it renders the contract void and releases the debtor from all payment.    The act provides that if either directly or indirectly there be reserved or accepted or secured or agreed to be reserved, accepted or secured any greater rate of interest than the legal rate, the contract is utterly void for all purposes and the collection of the debt or any proceeding to enforce the contract may be enjoined and the contract declared void without the payment of either the principal or the interest.

"Section 2 of the act, however, expressly provides: 'This act shall not apply to contracts entered into or obligations incurred or judgments rendered prior to the date of the passage hereof.'

"It is contended, however, that it is provided otherwise by section 9 of the act and that it being a subsequent section it is to govern.    It provides: 'Nothing herein contained shall be construed to apply to payments of interest made under contracts entered into prior to the passage of this act, in which a different or other rate of interest from that provided for herein is specified, or to the payment of interest on judgments entered on contracts entered into prior to the passage of this act in which another or different rate of interest is specified.'    It is said that the word "made" or the use of the past tense, applies only

to payments made prior to the passage of the act, and as the act is intended to prevent the payment of usury that the payment thereof after its passage by inference at least renders the contract void and usury paid recoverable.

"It is said that unless this be so there was no need for section 9, as section 2 fully provided as to contracts made prior to the passage of the act. If the contention of counsel for complainant is correct then, of course, the law is retrospective. It is a well-settled rule of construction that in the absence of clear provision otherwise, laws relate to the future. Persons act and contract with a view to the existing law and therefore it is generally unwise to enact retrospective legislation. Legislation is not to be so construed unless it is clear the legislature so intended and unless such construction is absolutely necessary to give meaning to the words used. Legislation purely remedial, that which is designed to correct an evil or suppress a mischief is the exception to this general rule. The constitutions of some of the States forbid retrospective legislation. While the Constitution of the United States forbids *ex post facto* laws, or those applying to offenses, it does not forbid merely retrospective legislation unless it impairs the obligation of a contract, and there is no law in Porto Rico forbidding the enactment of such legislation. A law impairing, however, a vested right would from the very nature and spirit of our government be void. It would deprive one of his own,—take it away from him,—and in effect give it to another. It was not within the power of the legislature to take the property of one person and give it to another nor could it deprive the owner of a debt which was legally created. Nor did it either intend to or do so by the act in question in my opinion. A law is to be construed in its entirety. The intention of the legislature is to be regarded more than grammatical rules. It has been said: 'For the letter of the law killeth, but the spirit giveth life.' The spirit of a statute is to govern rather than a strict grammatical construction of the words. When the entire act of the legislature in question is considered it is evident that it was not the intention that its provision should apply to contracts made prior to its passage. If a person had acquired property whether in the form of a debt or otherwise prior to the passage of the act in question and had in doing so complied in all respect with the then existing law, it would be unjust to deprive him of it by subsequent legislation. Section 9 of the act may have been intended to emphasize the fact that it was not intended to apply to contracts previously made; or inasmuch as section 3 of the act had provided for the recovery of usury at any time within one

year after its payment, it may have been intended the more clearly to declare that the act was not to apply to payments of interest made upon contracts entered into prior to the passage of the act. As the mortgage debt is still valid the complainant is entitled to set up against it whatever he may have paid on it. If he paid more by way of interest than the party could lawfully demand, he has the right to apply any such excess upon the principal of the debt when the creditor demands its payment. He is therefore in no view of the case entitled to relief.

"The demurrer to the bill is sustained and the bill is dismissed at complainant's cost."

It will be seen from the foregoing that this judgment carried costs, including a docket fee of $20 for the attorneys, all of which is alleged was paid in due course of execution. On the 3d of March, 1903, Crosas brought suit in the Municipal Court of Ponce for $400 damages alleged to be due him for attorney's fees, costs, etc., which he had incurred in the suit brought against him in the United States Court. His petition reads as follows:

"I, Angel Acosta Quintero, in the name and in representation ⍥ Francisco Crosas, married, a property holder, and a resident of this town, filed a civil suit against his fellow citizen Francisco Luis Battistini, of age, a property holder and a resident of this place on the plaza principal of this city, to enforce the payment of the sum of $400 damages caused him in the prosecution of an unjustified suit before the Circuit Court of the United States Court for Porto Rico, which I shall prove in due time.

"Wherefore, I pray the court to consider this suit as filed with a copy thereof, and to set a day and hour for the hearing, after the proper citation."

It will be seen that this case is based upon an unjustified suit which Battistini was alleged to have presented against him in the Circuit Court of the United States for Porto Rico. Upon the trial of this case judgment was rendered in the municipal court in favor of the defendant. From this judgment Crosas appealed to the District Court of Ponce, which

on the 22nd of May, 1903, reversed the judgment of the municipal court. Battistini then took an appeal from this judgment to the Supreme Court, and his appeal was dismissed by this court on technical grounds. The case was brought again in the municipal court, and judgment rendered for plaintiff for $150 and costs. Battistini in turn took an appeal to the District Court which rendered judgment against him on the 25th of March, 1904, for $275 and costs in favor of Crosas.

On the 13th of May, 1904, Battistini made application to this court for a writ of *certiorari,* bringing the case here for review. On the 17th day of May, 1904, the Municipal Court of Ponce was ordered to send up the record, and on the 26th of the same month the case was heard in the Supreme Court by a full bench, Mr. Guzmán Benítez representing Crosas. The petitioner was given ten days in which to file a brief in accordance with the leave granted. On the 15th of June, 1904, José Guzmán Benítez also filed a brief in this case. On the 24th of June, 1904, the writ of *certiorari* was granted, and on the 27th of the same month the municipal judge of Ponce was ordered to send up the record.

Nothing more was heard from the case until the 17th day of February, 1905, when the municipal judge of Ponce, who had been elected at the last general election, sent up the record in accordance with the writ of *certiorari* formerly issued, accompanied by a letter explaining the delay. On the 24th of February the case was set down for hearing on the 9th of March following, and was finally heard on that day, counsel for respondent, José Guzmán Benitez making an oral argument, and no counsel appearing for the petitioner.

An examination of the statutes will show that the law of *certiorari* was passed on the 10th of March, 1904 (see laws of Porto Rico, 1904). Final judgment was rendered in the District Court of Ponce fifteen days after the passage of the act, and not one year before, as counsel for respondent er-

roneously alleges in his brief and argument. There can be no doubt that the Supreme Court has jurisdiction to issue the writ of *certiorari* in this case. The District Court of Ponce rendered two judgments in the case which is now before us, the first being dated on the 22nd of May, 1903, and reads as follows:

*"Judgment.*—In the city of Ponce, on the 22nd day of the month of May, 1903, there took place the oral and public hearing of this appeal, which was taken from the judgment rendered in the action prosecuted before the municipal court of this city, by Francisco Crosas, who is married, and a property holder and a resident of this city, against Francisco Luis Battistini, who is of age, and a property holder and a resident of this place, relating to the collection of $400 as damages, the associate judge, Rafael Sánchez Montalvo, being *'Ponente'* for the drafting of this judgment.

*"Finding* that Francisco Crosas, under date of the 3rd of March of the present year, brought a civil oral action before the municipal court of this city, against Francisco Luis Battistini, in order that he should pay him $400 for damages caused to him by an unjustified action which he had brought against him, before the United States District Court for the District of Porto Rico.

*"Finding* that after the parties had appeared before the aforesaid municipal court, and had been heard by the same, said court proceeded to the hearing of the evidence, and as such was presented a certified copy of the decision rendered by the Judge of the United States District Court for the District of Porto Rico, in the action brought by Francisco Luis Battistini before the said court, against Francisco Crosas, from which decision it appears that under no aspect of the case presented Battistini was entitled to a declaration by the United States District Court that his complaint was well founded.

*"Finding* that when judgment was rendered by the lower court, the action was dismissed, Battistini was acquitted, and Crosas was condemned to the payment of the costs.

*"Finding* that after an appeal had been taken by the plaintiff from the aforesaid judgment the case came up before this court and after the appeal had been heard this judgment was rendered by a majority of the court.

*"Finding* that in the prosecution of this appeal the legal prescriptions of procedure have been complied with.

"*Concluding* that the legal question, object of this trial, is to decide whether in the present case the action brought by the plaintiff for the recovery of damages, is proper.

"*Concluding* that according to the doctrine established in section 722, chapter 12, title 13, of the Revised Statutes, the law in force in the State where the court performs its functions, shall be applied, when the laws of the United States are deficient.

"*Concluding* that in the present case no special provision applicable to the same does exist, it is necessary to abide by the provisions established in the civil laws in force in this Island, especially as the insular courts have complete jurisdiction to try this case by virtue of the appeal taken.

"*Concluding* that a person who by an act or omission causes damages to another, when there is fault or negligence, shall be obliged to repair the damage so done. (Sec. 1803, in relation with sec. 1804 of the Civil Code.)

"*Concluding* that the action brought by the defendant, Francisco Luis Battistini, against the plaintiff, Francisco Crosas, without any legal ground by virtue of which it could have been successful as is shown by the judgment of the judge of the United States District Court for the District of Porto Rico, who dismissed the same in all its parts, said action must be considered as malicious, and as having been brought for the purpose of injuring the interests of the opposing party to whom a real damage was caused through the fault of said Battistini, inasmuch as the latter, against all reason and right, compelled the former to defend himself in said action by answering the complaint and utilizing the services of a lawyer, whereby he caused him damages and costs of more or less importance; which damages have been demonstated, although the amount claimed for the same has not been proved.

"*Concluding* that it is proper to revoke the judgment from which appeal is taken and to declare the action to be well founded, condemning the defendant to the payment of the amount of damages claimed, and which must be fixed in the proceedings relating to the execution of the judgment.

"*Concluding* that the costs are always imposed upon the litigant, whose claims have been totally dismissed.

"In view of the legal provisions cited,

"*We adjudge,* that revoking the judgment rendered by the municipal court of this city, on the 14th of April last, we should declare, and do declare, the action to be well founded, and in consequence of

such declaration we condemn Francisco Luis Battistini to pay, within five days, to the plaintiff, Francisco Crosas, the amount of the damages which he has caused him, by the action brought before the United States District Court for the District of Porto Rico, which amount shall be fixed in the proceedings relating to the execution of the judgment according to the procedure established by law. And we condemn the defendant, Battistini, to the payment of all the costs. And let the record of the original proceedings, together with a certified copy of this judgment be transmitted to the municipal court of this city within the time allowed by law. Thus we pronounce, command and sign it.—Isidoro Soto Nussa.—R. Sánchez Montalvo.—E. B. Wilcox.''

Judge Wilcox files a dissenting opinion in this case, refusing to concur in the judgment of his colleagues for the reasons set forth in the record.

On the second appeal the District Court of Ponce rendered a judgment against the defendant for $275, which decision was reached on the 25th of March, 1904, and reads as follows:

*"Act of the Voting of the Judgment.*—In the city of Ponce, on the 25th day of the month of March, 1904, the day and hour fixed for the act of voting the judgment in the appeal taken from the decision rendered by the municipal court of this city, in the civil oral action prosecuted by Francisco Crosas, against Francisco Luis Battistini, for the recovery of damages, the court constituted itself in public session, being composed of the presiding judge, Isidoro Soto Nussa, and the associate judges, Rafael Sánchez Montalvo and E. B. Wilcox, and assisted by me, the secretary. The parties did not appear after the act had been announced, and thereupon the presiding judge formulated the following questions: Is it proper to reverse judgment from which appeal is taken, and instead of the same, to condemn Francisco Luis Battistini to pay Francisco Crosas, within the term of five days, the sum of $275, which has been sufficiently proven as the value of the damages claimed in this action? Is it proper to condemn the said Battistini to the payment of the costs? The judges of the court answered ''Yes'' to both questions. In consequence of this, the court unanimously *Adjudges:* That reversing the judgment rendered by the municipal judge of this city, under date of the 30th of October last

year, we should condemn, and do condemn, Francisco Luis Battistini, to pay within the term of five days to Francisco Crosas the sum of $275, with all the costs against the said Battistini.   And let the record of the original proceedings, together with a certified copy of this judgment be transmitted, within two days, to the respective municipal court.   Thus it was pronounced, commanded and signed by the judges of the court, to which I certify.—Isidoro Soto Nussa—R. Sánchez Montalvo—E. B. Wilcox.—Luis Gautier.''

It will be seen that the district court bases its judgments on the view that the suit brought by Battistini in the Federal court was without any legal ground, and from the fact that it was dismissed on demurrer by the judge of that court it should be considered as malicious and brought for the purpose of injuring the interest of the opposing party, etc.

According to all the authorities, this case brought by Battistini in the Federal court lacks all the elements of a malicious prosecution.   It was instituted on the advice of counsel, under an erroneous view of the law it is true, but nevertheless, under such an interpretation of the statute as called forth a lengthy opinion from the learned judge of the United States court after considering it for several months.   We do not see how it could have been considered by the District Court of Ponce to be malicious.   Battistini incurred the penalty of having brought an erroneous suit by being condemned to pay the costs, including the legal attorney's fees prescribed by the statutes of the United States.   If Crosas had to pay his attorneys more than the legal fee prescribed by law, it does not increase the liability of Battistini, and he cannot be required to reimburse Crosas for losses for which the law does not make him liable.   In the case of *Stewart* v. *Sonneborn*, reported in 98 U. S., on pp. 192, 194, 195, 196 and 197, the Supreme Court of the United States lays down the law in regard to malicious prosecutions as follows:

''It is abundantly settled that no suit can be maintained against an unsuccessful plaintiff or prosecutor, unless it is shown affirmatively

that he was actuated in his conduct by malice, or some improper or sinister motive. Malice is essential to the maintenance of any such action, and not merely (as the circuit court thought) to the recovery of exemplary damages. Notwithstanding what has been said in some decisions of a distinction between actions for criminal prosecutions and civil suits, both classes at the present day require substantially the same essentials. Certainly an action for instituting a civil suit requires not less for its maintenance than an action for malicious prosecution of a criminal proceeding.

"The existence of a want of probable cause is, as we have seen, essential to every suit for a malicious prosecution. Both that and malice must concur. Malice, it is admitted, may be inferred by the jury from want of probable cause, but the want of that cannot be inferred from any degree of even express malice.

"In every case of an action for a malicious prosecution or suit, it must be averred and proved that the proceeding instituted against the plaintiff has failed, but its failure has never been held to be evidence of either malice or want of probable cause for its institution; much less that it is conclusive of those things.

"If the jury believed from all the evidence that A. T. Stewart & Co. acted on the advice of counsel in prosecuting their claim against Sonneborn in the Circuit Court of Barbour County, and upon such advice had an honest belief in the validity of their debt, and their right to recover in said action; and in the institution of the bankruptcy proceedings acted likewise on the advice of counsel, and under an honest belief that they were taking and using only such remedies as the law provided for the collection of what they believed to be a bona fide debt, they having first given a full statement of the facts of the case to counsel, then there was no such malice in the wrongful use of legal process by them as would entitle the plaintiff to recover in this form of action."

There is a very serious doubt whether the insular courts should have taken jurisdiction in this case at all, arising as it did from costs and expenses incurred in the United States courts, and which were virtually settled in the judgment of that court. But as this question is not raised, it need not be decided.

Taking the case as presented, with all the record before us, and with all the evidence which was introduced in the trial (which, however, is but meagre), Crosas has failed to make out

any case against Battistini justifying any court in rendering a judgment against him, and for that reason the judgments of the District Court of Ponce and the municipal court of the same district should be annulled, and the said municipal court is ordered to enter another judgment in favor of Battistini, releasing him from all claims presented against him by Crosas, and adjudging the costs in his favor and against Crosas. The costs of this proceedings should also be adjudged against the respondent.

*Application granted.*

Chief Justice Quiñones and Justices Hernandez, Figueras and Wolf concurred.